Nos. 23-1900 & 23-2043

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

RONALD KOONS, ET AL.,

Plaintiffs-Appellees,

v.

MATTHEW J. PLATKIN, ET AL.,

Defendants-Appellants.

_____

AARON SIEGEL ET AL.,

Plaintiffs-Appellees,

v.

MATTHEW J. PLATKIN, ET AL.,

Defendants-Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
CASE NOS. 1:22-cv-07464, 1:22-cv-076463

_____

BRIEF FOR MICHIGAN COALITION FOR RESPONSIBLE GUN OWNERS & NEW
JERSEY FIREARM OWNERS SYNDICATE IN SUPPORT OF PLAINTIFF-
APPELLEES URGING AFFIRMANCE

_____

STEVEN W. DULAN
THE LAW OFFICES OF
STEVEN W. DULAN, PLC
5311 PARK LAKE ROAD
EAST LANSING, MI 48823
PH: (517) 332-3149

*Counsel for Michigan Coalition for Responsible Gun Owners & New Jersey Firearm Owners Syndicate-Amicus*

## <u>DISCLOSURE STATEMENT AND STATEMENT OF FINANCIAL INTEREST</u>

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Michigan Coalition for Responsible Gun Owners & New Jersey Firearm Owners Syndicate make the following disclosures:

1) For non-governmental corporate parties please list all parent corporations:

N/A

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

N/A

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

N/A

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured creditors; and (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal this information must be provided by the appellant.

N/A

s/_____    Dated: ___August 17, 2023___

C1

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT AND STATEMENT
OF FINANCIAL INTEREST ............................................................................ C1

TABLE OF CONTENTS ....................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF AMICI CURIAE ......................................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 3

INTRODUCTION ................................................................................................. 4

ARGUMENT ........................................................................................................ 8

    I. The Second Amendment Is Treated As A
      Second-Class Right With The Sweeping
      "Sensitive Place" Designations.. ............................................................... 8

    II. New Jersey's "Pointillist" Approach Renders
       The Carriage Of A Firearm For Self-Defense
       Unreasonably Burdensome. ..................................................................... 12

    III. Sweeping Restrictions Do Away With The Presumption
        Of The Right To Carry Publicly. ........................................................... 15

CONCLUSION ................................................................................................... 17

CERTIFICATE OF COMPLIANCE

ELECTRONIC DOCUMENT CERTIFICATE

CERTIFICATE OF BAR ADMISSION

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Burton v. Sills*, 53 N.J. 86, 105, 248 A. 2d 521 (1968)..................................13, 14

*District of Columbia v. Heller*, 544 U.S. 570 (2008)................................. *passim*

*Koons v. Reynolds,* --F.Supp.3d--, 2023 WL 3478604 (D.N.J. May 16, 2023) ...............10

*Marsh v. State of Ala.*, 326 U.S. 501 (1946)................................................16, 17

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)....................................3, 8, 10

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ............*passim*

*Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023) ..............................12

*Vanhorne v. Dorrance*, 2 U.S. 304 (1795)............................................................8

**Statutes**

1786 Va. Laws 25...............................................................................................10

N.J. Stat. Ann. § 2C:39-6 ...............................................................................7, 14

N.J. Stat. Ann. § 2C:58-4(b) ................................................................................14

N.J. Stat. Ann. § 2C:58-4(c) ................................................................................14

N.J. Stat. Ann. §2C:58-4(d) ..................................................................................9

N.J. Stat. Ann. § 2C:58-4(g) ...............................................................................14

N.J. Stat. Ann. § 2C:58-4.2(b) .......................................................................10, 11

N.J. Stat. Ann. § 2C:58-4.2(c).............................................................................11

N.J. Stat. Ann. § 2C:58-4.2(e)......................................................................9, 10, 13

N.J. Stat. Ann. § 2C:58-4.2(g) ...................................................................4, 9, 10

N.J. Stat. Ann. § 2:C58-4.2(h) ...........................................................................10

N.J. Stat. Ann. § 2C:58-4.6 .............................................................5, 6, 7, 16, 17

N.J. Stat. Ann. § 2C:58-4.6(a).........................................................5, 6, 7, 16, 17

N.Y. Penal Law § 265.01-e ................................................................................13

## Other Authorities

Brief for Crime Prevention Research Center as Amici Curiae
Supporting Petitioner, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) (No. 20-843) ...................................................................11

*Types of Painting – A Guide to Genres, Styles, and Techniques*,
https://acrylgiessen.com/en/types-of-painting/ (April 5, 2023).
Last accessed August 15, 2023 ............................................................................12

**INTEREST OF AMICI CURIAE**

Michigan Coalition for Responsible Gun Owners is a non-profit organization whose purpose is to promote responsible, legal ownership and usage through education, legislation, and litigation. Michigan Coalition for Responsible Gun Owners' mission is to protect and defend the right of our citizens to own, keep and bear arms as guaranteed by Article I, Section 6 of the Michigan Constitution and the Second Amendment to the U.S. Constitution.

New Jersey Firearm Owners Syndicate aims to promote the advancement of the Second Amendment rights in New Jersey through legislative action. New Jersey Firearm Owners Syndicate provides an environment conducive to the exchange of information sharing, application, and understanding of firearm laws in New Jersey.

Michigan Coalition for Responsible Gun Owners & New Jersey Firearm Owners Syndicate each have an interest, on behalf of their respective members, in supporting and affirming the rights of individual gun owners as the "palladium of liberty"[1] and promoting the general welfare by increasing the number of citizens who take personal responsibility for their own safety.

---

[1] *District of Columbia v. Heller*, 554 U.S. 570, 606 (U.S.,2008), citing 2 Tucker's Blackstone 143, Note D.

1

Michigan Coalition for Responsible Gun Owners & New Jersey Firearm Owners Syndicate files this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure upon the accompanying Motion for Leave to File Amicus Brief.

Counsel for the Plaintiff-Appellee did not author the brief, nor did Appellee's counsel contribute financial support intended to fund the preparation or submission of this brief. No other individual(s) or organization(s) contributed financial support intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's injunction on the challenged "sensitive place" locations. Plaintiffs are likely to prevail on the merits of their claims, and the State has failed to meet their burden justifying an infringement on an individual's Second Amendment rights. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111 (2022). Plaintiffs argue that the new law, which replaced the previous requirement for gun owners to demonstrate a "justifiable need" with a problematic and overly inclusive "sensitive places" restriction, which is equally unconstitutional.

New Jersey's novel and aggressive "sensitive place" expansion does violence to the Second Amendment by directly opposing the clear standards of *Heller*, *McDonald*, and *Bruen*. First, the expansion treats the right to publicly carry a firearm for self-defense as a second-class right through the Legislature's reliance on, and preference for, policy choices rather than this nation's history and tradition. Second, the expansion renders the right to publicly carry a firearm for self-defense illusory by stripping a law-abiding citizen of the means of meaningful and effective self-defense throughout virtually the entire state. Lastly, through the expansion, the Legislature creates a presumption that an individual cannot carry a firearm publicly for self-defense unless authorized by the state or an individual property owner, which turns the presumption found in *Bruen*, favoring carriage of a firearm publicly for self-defense, on its head.

3

# INTRODUCTION

"[. . .] [T]he right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[I]t is not the role of th[e] Court to pronounce the Second Amendment extinct." *District of Columbia v. Heller*, 544 U.S. 570, 636 (2008). The overbroad, sweeping "sensitive place" designations found in N.J. Stat. Ann. § 2C:58-4.2(g) stand in direct opposition to the Second Amendment and *Bruen*. Carrying a firearm for self-defense is a fundamental right under the Second and Fourteenth Amendments. *Bruen* at 2122. Additionally, *Bruen* altered the standard applied to the Second Amendment: if the Second Amendment's plain text covers an individual's conduct, then the Constitution presumptively protects the conduct. *Bruen* at 2129-130. "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen* at 2130. With this new standard, the Supreme Court has placed the Second Amendment in its rightful place as a part of the Bill of Rights. *See* id.

However, some obviously still believe that public policy alone justifies infringing on the right to bear arms for self-defense. In other words, a constitutional right must be subordinated to public policy. *Contra*, *Heller* at 636. Legislation that prohibits the carry of a firearm through the near entirety of a state is directly opposed to the clear standards defined in Second Amendment jurisprudence. Nevertheless, in response to *Bruen*, New

Jersey enacted a near complete prohibition on public carry through sweeping "sensitive place" designations:

> (1) a place owned, leased, or under the control of State, county or municipal government used for the purpose of government administration, including but not limited to police stations;

> (2) a courthouse, courtroom, or any other premises used to conduct judicial or court administrative proceedings or functions;

> (3) a State, county, or municipal correctional or juvenile justice facility, jail and any other place maintained by or for a governmental entity for the detention of criminal suspects or offenders;

> (4) a State-contracted half-way house;

> (5) a location being used as a polling place during the conduct of an election and places used for the storage or tabulation of ballots;

> (6) within 100 feet of a place where a public gathering, demonstration or event is held for which a government permit is required, during the conduct of such gathering, demonstration or event;

> (7) a school, college, university or other educational institution, and on any school bus;

> (8) a child care facility, including a day care center;

> (9) a nursery school, pre-school, zoo, or summer camp;

> (10) a park, beach, recreation facility or area or playground owned or controlled by a State, county or local government unit, or any part of such a place, which is designated as a gun-free zone by the governing authority based on considerations of public safety;

> (11) youth sports events, as defined in N.J.S.5:17-1, during and immediately preceding and following the conduct of the event, except that this provision shall not apply to participants of a youth sports event

which is a firearm shooting competition to which paragraph (3) of subsection b. of section 14 of P.L.1979, c.179 (C.2C:58-6.1) applies;

(12) a publicly owned or leased library or museum;

(13) a shelter for the homeless, emergency shelter for the homeless, basic center shelter program, shelter for homeless or runaway youth, children's shelter, child care shelter, shelter for victims of domestic violence, or any shelter licensed by or under the control of the Juvenile Justice Commission or the Department of Children and Families;

(14) a community residence for persons with developmental disabilities, head injuries, or terminal illnesses, or any other residential setting licensed by the Department of Human Services or Department of Health;

(15) a bar or restaurant where alcohol is served, and any other site or facility where alcohol is sold for consumption on the premises;

(16) a Class 5 Cannabis retailer or medical cannabis dispensary, including any consumption areas licensed or permitted by the Cannabis Regulatory Commission established pursuant to section 31 of P.L.2019, c.153 (C.24:6I-24);

(17) a privately or publicly owned and operated entertainment facility within this State, including but not limited to a theater, stadium, museum, arena, racetrack or other place where performances, concerts, exhibits, games or contests are held;

(18) a casino and related facilities, including but not limited to appurtenant hotels, retail premises, restaurant and bar facilities, and entertainment and recreational venues located within the casino property;

(19) a plant or operation that produces, converts, distributes or stores energy or converts one form of energy to another;

(20) an airport or public transportation hub;

(21) a health care facility, including but not limited to a general hospital, special hospital, psychiatric hospital, public health center, diagnostic center, treatment center, rehabilitation center, extended care facility, skilled nursing home, nursing home, intermediate care facility, tuberculosis hospital, chronic disease hospital, maternity hospital, outpatient clinic, dispensary, assisted living center, home health care agency, residential treatment facility, residential health care facility, medical office, or ambulatory care facility;

(22) a facility licensed or regulated by the Department of Human Services, Department of Children and Families, or Department of Health, other than a health care facility, that provides addiction or mental health treatment or support services;

(23) a public location being used for making motion picture or television images for theatrical, commercial or educational purposes, during the time such location is being used for that purpose;

(24) private property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed firearm with a valid and lawfully issued permit under N.J.S.2C:58-4, provided that nothing in this paragraph shall be construed to affect the authority to keep or carry a firearm established under subsection e. of N.J.S.2C:39-6; and

(25) any other place in which the carrying of a firearm is prohibited by statute or rule or regulation promulgated by a federal or State agency.

N.J. Stat. Ann. §2C:58-4.6(a).

These sweeping restrictions, with their broad language, amount to an unreasonable infringement on a law-abiding citizen's constitutional right to carry for self-defense that has three negative consequences for the Second Amendment. First, the Second

7

Amendment is treated as a second-class right. Second, qualified, law-abiding citizens would be disarmed through an approach that covers the map of the state with so many prohibited locations that it becomes nearly impossible to leave one's home and conduct normal activities while armed. Finally, the presumption of the right to carry a firearm for self-defense would be eviscerated.

## ARGUMENT

I.   **The Second Amendment Is Treated As A Second-Class Right With The Sweeping "Sensitive Place" Designations.**

Overbroad "sensitive place" designations make the Second Amendment a second-class right. The New Jersey Legislature replaced an unconstitutional restriction with another unconstitutional restriction by relying on policy preferences rather than the historical tradition of the Founding Era as required by *Bruen*. 142 S. Ct. 2111 (2022). As a fundamental right, carrying a firearm "in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen* at 2156 (citing *McDonald*, 561 U.S. 742, 780 (2010) (plurality opinion)). As such, "[t]he enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller* at 636. Stated differently, legislatures are limited in their authority to enact laws by the confines of the Constitution. *See VanHorne's Lessee v. Dorrance*, 2 U.S. 304, 311 (1795).

First, the Second Amendment was treated as a second-class right when New Jersey's unconstitutional "proper cause" requirement, *Bruen* at 2156, was replaced with

its numerous "sensitive place" designations. [2] Without the ability to limit who is issued a permit anymore, the Legislature's response was to limit where a permitted individual can carry.

> Previously, application of the justifiable need standard minimized the serious dangers of misuse and accidental use inherent in the carrying of firearms in a public place. Given the likelihood that a much greater number of individuals will now qualify to carry firearms in public, it is now both necessary and appropriate to clearly identify in the law those sensitive places where, due to heightened… concerns….

N.J. Stat. Ann. § 2C:58-4.2(g).

So, similar to the way in which some states utilized the overly restrictive "proper cause" requirement to control the number of firearms in public, some states are now attempting to designate vast areas as prohibited to curtail the number of firearms in public. Additionally, in the same way that the "proper cause" requirement denies normal self-defense needs, sweeping restrictions have the same effect because prohibiting carriage of a firearm virtually throughout an entire state severely restricts normal self-defense needs.

Second, although the statute's language acknowledges that Bruen requires historical analogues, the language clearly indicates that policy preferences were the driving force of the prohibited location designations. The statute makes the mere naked assertion that its prohibitions are "based on . . . historical analogues." N.J. Stat. Ann. §

---

[2] New Jersey's carry permit statute, before *Bruen,* required a showing of "justifiable need" for a carry permit, N.J. Stat. Ann. § 2C:58-4(d) (since amended).

2C:58-4.2(e). The same is cited in subsection (g). Subsection (h) attempts to justify the prohibition of carrying on private property. *See also* N.J. Stat. Ann. §§ 2C:58-4.2(g), (h). However, as Judge Bumb observed in her opinion below, the state cherry-picked specific language from historical statutes while ignoring other language unfavorable to their position within the same provision. *See Koons v. Reynolds*, --F.Supp.3d--, 2023 WL 128882, at *14, *17 (D.N.J. Jan. 9, 2023). For example, Defendants stated in their district court brief that "[a] 1786 Virginia law prohibited 'rid[ing] armed by night nor by day in fairs or markets.'" Brief For Petitioner at 29, *Koons v. Reynolds*, --F.Supp.3d--, 2023 WL 128882, at *14 (D.N.J. Jan. 9, 2023) (No. 22-CV-7164). However, the complete provision reads, "rid[ing] armed by night nor by day in fairs or markets, in terror of the county." 1786 Va. Laws 25 (emphasis added). Judge Bumb accurately points out that the statute describes prohibited *conduct* rather than *carrying* firearms in those locations. *Koons* at *14.

In contrast, the Legislature placed more effort into stating the public policy justification for the sweeping restrictions than following the clear standards defined in *Heller*, *McDonald*, and *Bruen*.

> [T]he Legislature can enact laws to protect our communities from threats to public health, safety, and welfare posed by gun violence, which take into account as appropriate the Supreme Court's Second Amendment ruling while continuing to promote and enhance public safety.

N.J. Stat. Ann. § 2C:58-4.2(b); *See also* (e), *supra*. Both subsections (b) and (e) clearly demonstrate that public policy was the driving force behind the restrictions' enactment rather than the case law. Relying on public policy to legitimize firearm regulation is no different than using the means-end justification that was so common prior to *Bruen*. *See* 142 S. Ct. at 2127 (means-end is not supported in the Second Amendment context). To further substantiate that public policy was the sole consideration, the statute cites a study from John Hopkins Bloomberg School of Public Health about an estimated increase in officer-related shootings in states with more relaxed gun laws. N.J. Stat. Ann. § 2C:58-4.2(c). However, for a comprehensive layout of statistical analysis of gun-related incidences in relation to permissive versus restrictive gun laws, amici refer the Court to the Amicus brief in support of the prevailing party in *Bruen* from the Crime Prevention Research Center (CPRC).[3] Brief for Crime Prevention Research Center as Amici Curiae Supporting Petitioner, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) (No. 20-843), 2021 WL 3142176. The Court will find that the numerous unbiased studies used in CPRC's brief paint a different picture than the single study the New Jersey Legislature cited.

---

[3] "The Crime Prevention Research Center (CPRC) is a research and education organization dedicated to conducting academic quality research on the relationship between laws regulating the ownership or use of guns, crime, and public safety; educating the public on the results of such research; and supporting other organizations, projects, and initiatives that are organized and operated for similar purposes." https://crimeresearch.org/about/ (accessed August 14, 2023).

11

Nevertheless, the analysis of the fundamental constitutional right takes policy debates off the table, *Heller* at 636, and does not allow the "judge to assess the cost and benefits of firearm restrictions." *Bruen* at 2129. Amici urge this Court not to allow policy debate to cloud its determination. Instead, amici urge this Court to keep the Second Amendment in its rightful place and restrict its analysis to the history and tradition of the Founding Era as this Court did in *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023)(holding the Nation's history and tradition of firearm restrictions did not support depriving a firearm purchaser's Second Amendment right despite obtaining food stamps illegally through false statements).

## II. New Jersey's "Pointillist" Approach Renders The Carriage Of A Firearm For Self-Defense Unreasonably Burdensome

An image can be painted using many different techniques. Some artists prefer using obvious and broad strokes, known as Impressionism.[4] Some prefer a less obvious method – pointillism.

> "[P]ointillism uses a series of small and distinct dots to create an image when viewed from a distance. The dots are different colors and are combined to create shading, highlights, and blending."

*Id.* It is a less obvious approach than Impressionism. However, the same image can be depicted using either method.

---

[4] *Types of Painting – A Guide to Genres, Styles, and Techniques*, https://acrylgiessen.com/en/types-of-painting/ (April 5, 2023). Last accessed August 15, 2023.

When the broad-stroke approach to "sensitive place" designations failed, "pointillism" became the choice approach. Before the Supreme Court decided *Bruen*, New York tried to define "sensitive place" as broadly as possible. *Bruen* at 2133. The definition New York set forth was where people congregate, and law enforcement and other public safety professionals are assumed to be available. *Bruen* at 2133-134. As a result, carrying a firearm in vast areas, such as Manhattan, would be restricted, which the Supreme Court found unconstitutional. *Bruen* at 2134. *Bruen* left New York holding an image of unconstitutional disarmament painted with an unconstitutional technique.

Not to be deterred, New York State has pursued the same unconstitutional image using pointillism to prohibit public carry in a multitude of locations. N.Y. Penal Law § 265.01-e (McKinney 2023). New Jersey has followed suit with nearly identical prohibitions to the same effect—practical disarmament of those already permitted to carry a firearm in public. Furthermore, New Jersey's statute even states that the purpose is to restrict the number of firearms in public. *See* N.J. Stat. Ann. § 2C:58-4.2(e), *supra*.

New Jersey prohibits the free exercise of a fundamental constitutional right and denies the right to those it has already deemed "fit elements" to carry in public.

> "New Jersey's Gun Control Law [was] highly purposed and conscientiously designed toward preventing criminal and other unfit elements from acquiring firearm while enabling the fit elements of society to obtain them with minimal burdens and inconveniences."

*Burton v. Sills*, 53 N.J. 86, 105, 248 A. 2d 521 (1968). New Jersey already has an extensive and rigorous permitting process. An individual must submit an application with four reputable persons as references to the New Jersey State Police or local law enforcement. N.J. Stat. Ann. § 2C:58-4(b). The individual must also submit fingerprints for federal and local background checks. N.J. Stat. Ann. § 2C:58-4(c). Then, the superintendent or police chief must interview the individual and the four references, and the individual may be required to submit additional information for the superintendent or police chief to review. *Id.* Finally, the individual must complete a training course approved by the Police Training Commission. N.J. Stat. Ann. § 2C:58-4(g). An individual goes through the onerous and burdensome process only to be confronted by a map that is dotted with "sensitive places" resembling a measles outbreak. So, otherwise, qualified (law-abiding, responsible) citizens become criminals for exercising their Second Amendment right unless they fall within the narrow exceptions such as Federal Law Enforcement officers, State Police members, Sheriff Deputies, or other security personnel. N.J. Stat. Ann. § 2C:39-6; *See Bruen* at 2131, citing *Heller*, 554 U.S. at 635, 128 S. Ct. 2783.

New Jersey's "pointillist" approach paints the same image of disarmed citizens as New York's—prohibition of a fundamental right. It has colored the map unreasonably, nullifying the right to effective and meaningful self-defense, thus rendering the Second Amendment right to carry for self-defense outside the home illusory.

14

### III.    Sweeping Restrictions Do Away With The Presumption Of The Right To Carry Publicly.

New Jersey's sweeping prohibitions do away with the presumption of the right to publicly carry for self-defense by rendering the "sensitive place" designation obsolete and requiring permission for all private property. *Bruen* creates a presumption that carrying in public for self-defense is permitted because the conduct is covered by the plain text of the Second Amendment. *Bruen* at 2129-130. That presumption stands until the government satisfies its burden by showing that the statutory restrictions comply with the Second Amendment, including the historical and traditional analysis. *Bruen* at 2130. "Sensitive place" designations are no exception, but such a designation could rebut the presumption if the location is analogous to other historical "sensitive places."  *Bruen* at 2134.

On the one hand, *Heller*, which *Bruen* later amplifies, suggests that "sensitive places" may exist. *Heller* at 626; *Bruen* at 2133. Even though the debate on sensitive places may still be open, the implication is that a place must be sufficiently sensitive to restrict the fundamental right to carry a firearm for self-defense. The analysis points to the conclusion that they are few.

On the other hand, the sheer volume of New Jersey's restricted areas turns *Bruen*'s presumption on its head. In contrast to *Heller* and *Bruen*, the sheer number of "sensitive place" designations is vast here. As a result, a qualified private citizen cannot carry in the vast majority of locations unless explicitly stated otherwise by the state or property

owner. Moreover, as the saying goes, "If you have highlighted everything, you have highlighted nothing." Except for some public streets and sidewalks, New Jersey has deemed almost everywhere a "sensitive place," leaving nearly nothing truly to be a sensitive place. By doing so, the Second Amendment is hobbled by issuing carry permits but then restricting public carry throughout virtually the entirety of the state.

The provision designating all private property as a prohibited location is especially problematic. "The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Marsh v. State of Ala.*, 326 U.S. 501, 506 (1946). Although *Marsh* dealt with a different fundamental, constitutional right (the First Amendment) applying to a privately owned town, *Id.* at 502-04, the principle that the more open to the public property is, the more a property owner's rights are subordinated to the constitution still carries through. So, in this instance, if private property is open to the public, the presumption that an individual could carry a firearm would stand. That would be consistent with the holding in *Marsh* and *Bruen*.

But Jersey's provision states the opposite.

> [P]rivate property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, *unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed firearm* with a valid and lawfully issued permit . . .

N.J. Stat. Ann. § 2C:58-4.6(a)(24)(Emphasis added). With the need for express consent or a posted sign stating that carrying on the property is permissible, the presumption becomes that a qualified citizen cannot carry on any private property unless authorized. This is inconsistent with *Marsh* and *Bruen*. Therefore, amici urge this Court to stay true to the "[h]istorical restrictions on firearm in 'sensitive places' do not empower legislatures to designate *any* place 'sensitive' and then ban firearm there," *Bruen* at 2134 (emphasis added), and to the presumption enumerated in *Bruen*.

## CONCLUSION

Despite the New Jersey Legislature's clinging to the failed gun control policies of the past, what is not debatable "is that it is not the role of th[e] Court to pronounce the Second Amendment extinct." *Heller* at 636. If the challenged provisions are allowed to stand, the Second Amendment is treated as a second-class right with the sweeping "sensitive place" designations; qualified, law-abiding citizens would be disarmed, and the presumption of the right to carry a firearm for self-defense would be eviscerated. Therefore, this Court should affirm to the extent the district court granted Appellees/Cross-Appellants' preliminary injunction, but reverse the remaining challenges of New Jersey's "sensitive place" designations.

Respectfully submitted,

Dated:    August 17, 2023
East Lansing, Michigan

s/ _____

Steven W. Dulan
Michigan State Bar No. P53914
The Law Offices Steven W. Dulan, PLC
5311 Park Lake Road
East Lansing, MI 48823
Ph: (517) 332-3149
*Counsel for Michigan Coalition for Responsible Gun Owners & New Jersey Firearm Owners Syndicate*

18

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 3,678 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:   <u>August 17, 2023</u>       s/<u>                      </u>

       East Lansing, Michigan        Steven W. Dulan

*Counsel for Michigan Coalition for Responsible Gun Owners & New Jersey Firearm Owners Syndicate*

## <u>ELECTRONIC DOCUMENT CERTIFICATE</u>

Pursuant to Third Circuit Local Appellate Rule 31.1(c), I hereby certify that the text of the electronic brief is identical to the text in the paper copies.

The brief was scanned for viruses using Windows Defender, and no viruses were detected.

Dated:  ___August 17, 2023___          s/_____
       East Lansing, Michigan          Steven W. Dulan

*Counsel for Michigan Coalition for*
*Responsible Gun Owners & New Jersey*
*Firearm Owners Syndicate*

## **CERTIFICATE OF BAR ADMISSION**

Pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1, I certify that I

have filed an application for admission to the bar of the United States Court of Appeals

for the Third Circuit and was admitted on July 21, 2023.

Dated:   August 17, 2023                   s/

      East Lansing, Michigan            Steven W. Dulan

*Counsel for Michigan Coalition for
Responsible Gun Owners & New Jersey
Firearm Owners Syndicate*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court

for the United States Court of Appeals for the Third Circuit by using the appellate

CM/ECF system on August 17, 2023. I certify that all participants in the case are

registered CM/ECF users and that the appellate CM/ECF system will accomplish service.

Dated:    August 17, 2023             s/_____

   East Lansing, Michigan             Steven W. Dulan

                                      *Counsel for Michigan Coalition for*
                                      *Responsible Gun Owners & New Jersey*
                                      *Firearm Owners Syndicate*