# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Nos. 23-1900, 23-2043

RONALD KOONS et al.,
*Plaintiffs-Appellees*,

v.

MATTHEW J. PLATKIN et al.,
*Defendants-Appellants*

and

NICHOLAS P. SCUTARI et al.
*Intervenors-Defendants-Appellees*

AARON SIEGEL et al.,
*Plaintiffs-Appellees / Cross-Appellants*,

v.

MATTHEW J. PLATKIN et al.,
*Defendants-Appellants / Cross-Appellees*

and

NICHOLAS P. SCUTARI et al.
*Intervenors-Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Nos. 22-cv-7463, 22-cv-7464 (RMB))

**DEFENDANTS-APPELLANTS' BRIEF IN RESPONSE TO THE PETITIONS FOR REHEARING EN BANC**

MATTHEW J. PLATKIN
  *Attorney General of New Jersey*

ANGELA CAI
  *Executive Assistant Attorney General*

JEREMY M. FEIGENBAUM
  *Solicitor General*

JEAN REILLY
  *Assistant Attorney General*

VIVIANA M. HANLEY
  *Deputy Attorney General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(862) 350-5800
angela.cai@njoag.gov

*Attorneys for Defendants-Appellants*
*New Jersey Attorney General*
*Matthew J. Platkin and Superintendent of*
*New Jersey State Police Colonel*
*Patrick Callahan*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ......................................................................................1

STATEMENT OF THE CASE.................................................................3

ARGUMENT ...........................................................................................6

    I.    EN BANC REVIEW IS UNWARRANTED AS TO
          NEW JERSEY'S BACKGROUND CHECK
          REQUIREMENTS. ...............................................................6

    II.   EN BANC REVIEW IS UNWARRANTED AS TO THE
          SENSITIVE-PLACE DESIGNATIONS THAT THE
          PANEL UPHELD. ...............................................................11

CONCLUSION.......................................................................................16

CERTIFICATION OF BAR MEMBERSHIP.........................................18

CERTIFICATION OF COMPLIANCE ..................................................19

CERTIFICATION OF SERVICE...........................................................20

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Antonyuk v. James*,
    120 F.4th 941 (2d Cir. 2024) .............................................................11

*Bartlett v. Bowen*,
    824 F.2d 1240 (D.C. Cir. 1987) ..........................................................1

*Kanter v. Barr*,
    919 F.3d 437 (7th Cir. 2019) ...............................................................6

*Koons v. Att'y Gen.*,
    No. 23-1900, (3d Cir. Sept. 17, 2025) ...................................... *passim*

*LaFave v. Cnty. of Fairfax*,
    149 F.4th 476 (4th Cir. 2025) .............................................................11

*Lara v. Commissioner of Pennsylvania State Police*,
    125 F.4th 428 (3d Cir. 2025) ................................................... 3, 13, 14

*Mitts v. Bagley*,
    626 F.3d 366 (6th Cir. 2010) ........................................................ 1, 15

*NYSRPA v. Bruen*,
    597 U.S. 1 (2022) ............................................................... *passim*

*Range v. Atty. Gen.*,
    124 F.4th 218 (3d Cir. 2024) ...............................................................6

*Riccio v. Sentry Credit*,
    954 F.3d 582 (3d Cir. 2020) ...............................................................12

*Schoenthal v. Raoul*,
    150 F.4th 889 (7th Cir. 2025) ....................................................... 11, 15

*United States v. Harris*,
    144 F.4th 154 (3d Cir. 2025) ...............................................................13

*United States v. Quailes*,
   126 F.4th 215 (3d Cir. 2025) ...............................................................14

*United States v. Rahimi*,
   602 U.S. 680 (2024) ................................................................... *passim*

*Wolford v. Lopez*,
   __ S.Ct. ___, 2025 (Oct. 3, 2025)........................................................12

*Wolford v. Lopez*,
   116 F.4th 959 (9th Cir. 2024) ..............................................................11

## Statutes

18 U.S.C. § 922 ....................................................................................10

N.J. Stat. Ann. § 2C:58-3 ........................................................................8

N.J. Stat. Ann. § 2C:58-4 ....................................................................8, 9

N.J. Stat. Ann. § 2C:58-4.2 .................................................................3, 4

N.J. Stat. Ann. § 2C:58-4.3 ....................................................................4

N.J. Stat. Ann. § 2C:58-4.6 ....................................................................4

## Other Authorities

"N.J. Permit to Carry Dashboard"
   *available at* https://www.njnics.com/ptc.php.......................................7

## Rules

Fed. R. App. P. 40 .......................................................................... 1, 7, 12

# **INTRODUCTION**

"Rehearing en banc is not favored," FRAP 40(a), an instruction this Court follows "strictly," 3d Cir. IOP 9.3.1. This Court will rehear a decision en banc only if "the panel decision conflicts with a decision" of the Supreme Court, this Court, or its sister circuits, or raises "questions of exceptional importance." FRAP 40(b)(2), (c); 3d Cir. IOP 9.3.2. And there are good reasons why this Court rarely rehears cases en banc: such review is "inefficient" compared to panel-adjudication, nullifies "a panel opinion that is the product of a substantial expenditure of time and effort by three judges and numerous counsel," and "requires a majority of circuit judges to sit in judgment of" the careful and detailed work of "two or three colleagues." *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring in denial of rehearing en banc) (quoting *Bartlett v. Bowen*, 824 F.2d 1240, 1243-44 (D.C. Cir. 1987) (Edwards, J., concurring in denial of rehearing en banc)).

There is no basis to rehear en banc the panel's careful and detailed opinion, which assessed a series of firearms provisions New Jersey enacted in the wake of *Bruen*, considered each in light of the Nation's historical tradition, and ultimately upheld some provisions while invalidating others. The panel held that the law's permitting regime, including the requirement to provide four references as part of a background check, aligned with the longstanding American tradition of preventing dangerous individuals from carrying firearms through proactive regulation, and the

1

panel determined that most of the law's sensitive-places measures fit the historical tradition. But far from rubber-stamping state law, the panel rigorously scrutinized its terms and invalidated those it found not relevantly similar to the historical evidence, from the State's insurance mandate, to the prohibition on carrying loaded firearms in private vehicles, to a restriction on carrying firearms on any private property held open to the public without the owner's affirmative consent.

Plaintiffs seek en banc review as to the panel's decisions to uphold the State's background-check system and to uphold a range of sensitive-place designations, but cannot show that the demanding en banc standard is satisfied. *First*, Plaintiffs seek en banc review to assess whether New Jersey can require applicants for carry permits to produce four references. But the panel decision upholding this reference provision implicates no inter-circuit or intra-circuit conflicts, nor any question of exceptional (let alone practical) importance: Plaintiffs fail to show that requiring references on permit applications meaningfully interferes with their or others' ability to obtain a permit. Instead, this is a case-specific dispute: *Bruen* endorses permitting regimes to prevent dangerous persons from carrying firearms, and requiring references as part of background checks is merely one permissible way to effectuate that tradition.

*Second*, the panel's decision upholding most of the challenged sensitive places does not warrant en banc review either. There is, as before, no inter-circuit or intra-circuit conflict that warrants rehearing; to the contrary, where the panel waded into

a split, it sided with the *challengers*—invalidating a provision governing the carrying of guns on private property held open to the public without an owner's affirmative consent. Instead, the panel's methodical opinion is consistent in both outcomes and methodology with *Bruen* and *Lara v. Commissioner of Pennsylvania State Police*, 125 F.4th 428 (3d Cir. 2025). The panel fastidiously followed *Bruen*'s instructions, and relied on 19th century history only where there was no conflict with Founding-era tradition. The result, contrary to Plaintiffs' characterizations, leaves parties free to carry in large part as they go about their daily lives, from home to work, on the streets and roads, and in many private businesses. And the result flows from the panel's exhaustive and methodological historical analysis.

This Court should deny rehearing en banc.

## STATEMENT OF THE CASE

"For many decades, New Jersey required anyone who wanted to carry a handgun in public to demonstrate a 'justifiable need' for self-protection." *Koons v. Att'y Gen.*, No. 23-1900, Slip Op. at 9 (3d Cir. Sept. 17, 2025) ("Op."). After the Supreme Court held that such requirements violated the Second Amendment, *Bruen*, 597 U.S. at 10–11, the Legislature enacted Public Law 2022, Chapter 131. Op.9. To conform to *Bruen*, Chapter 131 repealed the State's "justifiable need" requirement. *Id*. Given that this change would significantly increase the number of individuals eligible to carry, *see* N.J. Stat. Ann. §2C:58-4.2(c)–(d), Chapter 131 strengthened

background checks for obtaining permits to carry in public, *id.* §2C:58-4, required liability insurance, *id.* §2C:58-4.3, and specified sensitive locations where carrying firearms was prohibited, *id.* §2C:58-4.6. The Legislature enacted these changes "to promote public safety and reduce gun violence in a manner consistent with the Second Amendment principles articulated" in *Bruen*. *Id.* §2C:58-4.2(j).

Two sets of plaintiffs sued, challenging many of Chapter 131's sensitive-place measures, private property measure, insurance requirement, permit fee increase, and background check process. Op.14. As relevant, the panel ultimately rejected challenges to a number of sensitive places (mostly on the merits, but one for lack of standing), and affirmed the district court's decision[1] upholding a character reference requirement for obtaining a carry permit. *Id.* at 138–39. But it affirmed the district court's decision to preliminarily enjoin the statute's liability insurance requirement, its prohibition on carrying in private vehicles, and its restriction on carrying firearms on private property held open to the public without the owner's consent. *Id.*

The panel reached this nuanced result by "analogiz[ing] to principles distilled from our Nation's history and tradition." Op.25. It comprehensively surveyed the history of American gun regulations, Op.29–70, assessing "post-ratification history, as well as the Founding era" only when it "aids in … understanding … and does not

---

[1] *Siegel* Plaintiffs erroneously state that the panel reversed the district court's ruling on this point. *Compare Koons v. Platkin*, 673 F. Supp. 3d 515, 576 (D.N.J. 2023).

conflict with, the original meaning." Op.25–26. And based on that history, the panel determined that some challenged provisions fit the Nation's regulatory traditions but others did not. Op.70–135. The panel agreed with the district court that Chapter 131's reference requirement fit within the "deeply rooted tradition" of "limit[ing] the ownership and use of guns to those who were not considered dangerous by their communities." Op.79. And it upheld most challenged sensitive-place restrictions as following "the centuries-old practice of proscribing weapons at discrete locations … set aside for the purposes of governmental services and peaceful assembly," Op.89–90, as well as history particular to each space. *See* Op.88–95 (permitted gatherings); Op.95–104 (public parks, beaches, zoos, youth sporting events); Op.104–08 (public libraries); Op.108–13 (establishments that serve alcohol); Op.114–17 (entertainment facilities); Op.117–20 (casinos); Op.120–26 (healthcare facilities).

But it did not uphold everything. The panel held that the Legislature could not require individuals to obtain liability insurance before carrying publicly, despite the historical tradition of surety laws, because the measures were too different in "how they burden[ed] the right to bear arms" and "in their purpose." Op.71–75. The panel likewise invalidated Chapter 131's ban on carrying firearms on private property held open to the public without the owner's consent (even though another circuit already upheld such a measure), considering the State's "proffered historical analogues" too

5

dissimilar. Op.87–88. And the panel upheld a preliminary injunction against the state law provision that prohibited carrying in private vehicles. Op.127–32, 135.

## ARGUMENT

The panel's methodical decisions on New Jersey's reference requirement and on the sensitive-place designations it upheld do not present the sort of extraordinary circumstances that warrant en banc rehearing.

## I. EN BANC REVIEW IS UNWARRANTED AS TO NEW JERSEY'S BACKGROUND CHECK REQUIREMENTS.

The dispute regarding the reference requirement is exceedingly narrow. There is no dispute that States may prevent individuals who pose a danger to self or others from carrying firearms in public. *See United States v. Rahimi*, 602 U.S. 680, 698 (2024) (history permits laws disarming those who "pose[] a clear threat of physical violence"); *Range v. Atty. Gen.*, 124 F.4th 218, 232 (3d Cir. 2024) (en banc); *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting). Nor does anyone dispute that States may use permitting laws, including background checks, to assess in advance if the applicant can be trusted not to pose such a danger. *See NYSRPA v. Bruen*, 597 U.S. 1, 38 n.9 (2022) (endorsing permitting regimes that "often require applicants to undergo a background check" to limit public carrying to "law-abiding, responsible citizens"). The sole question is whether *this* background check process, with four references, goes too far. That hardly warrants en banc rehearing.

6

That case-specific dispute implicates no traditional en banc criteria. Plaintiffs cite no inter- or intra-circuit conflict regarding the constitutionality of background check regimes, let alone on the use of references or number of references. *Compare* FRAP 40(b), *with Siegel*.Pet.6–12. Nor can Plaintiffs show that a dispute over the use or number of references in a background check process raises a "question[] of exceptional importance" requiring the en banc court to relitigate the careful work of the three-judge panel. FRAP 40(b)(2), (c). Plaintiffs have never argued that they would fail to identify four references, nor have they argued—let alone put together even a preliminary record—showing that significant numbers of persons exist who would otherwise be qualified to carry publicly but are unable to find four references. To the contrary, the latest publicly available data indicates that the State approved 68,377 applications since *Bruen* and denied only 342. *See* "N.J. Permit to Carry Dashboard," *available at* https://www.njnics.com/ptc.php. Given the narrowness of Plaintiffs' challenges—not to permitting or a background check, just the reference requirement—the practical need for en banc review is slight.

Plaintiffs instead argue that the panel decision is wrong under precedent and history, but even assuming that mere merits disagreements could suffice for en banc review, their contentions fail. Although Plaintiffs claim the reference requirement flouts *Bruen* and *Rahimi* because the requirement imposes "discretionary criteria" for granting the carry permit, *Siegel*.Pet.10–12, they misunderstand how the scheme

7

works. State law separately delineates the substantive criteria for granting or denying a permit to carry firearms, *see* N.J. Stat. Ann. §§2C:58-3(c), -4(d)(1), none of which were challenged on appeal. Requiring four references is merely *how* the Legislature ensures permitting law enforcement officers have sufficient information to determine whether an applicant "is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others" if issued a permit. N.J. Stat. Ann. §2C:58-3(c). *Bruen* itself endorsed permitting regimes to sort law-abiding citizens from dangerous ones, and references here are no more than an information-gathering tool allowing law enforcement to assess who presents such a danger—just as references are used for other background checks.

Plaintiffs' claim that demanding references as an information-gathering tool violates our historical tradition fares no better. Instead, as the district court and panel held, there is a "deeply rooted tradition" of limiting firearms "to those who were not considered dangerous by their communities." Op.79; *see Koons*, 673 F. Supp. 3d at 576. Historical surety laws—"well entrenched in the common law"—first assessed whether an individual was reasonably "suspected of future misbehavior," and if they were, required them to post a bond (or else be jailed) and forfeit that bond if they breached the peace. *Rahimi*, 602 U.S. at 695–96. That is, "surety laws provided a mechanism for preventing violence before it occurred," and they turned specifically on statements by individuals who knew them regarding the threat they posed. *Id.* at

697. The reference requirement operates similarly and on a similar rationale: it aims to prevent gun violence by providing a mechanism through which officials can learn whether an individual who wishes to publicly carry is reasonably suspected by their community of posing a danger if armed—and deny a permit if so.

*Siegel* Plaintiffs' responses fall short. *Siegel*.Pet.13–17. Plaintiffs claim that a permitting regime with references (which applies to all applicants) is too different in operation from a surety regime (which applies only to those that were the subject of complaints). But that argument—which calls into doubt "any ex ante restriction," where no complaint has first been filed, *Siegel*.Pet.10—contradicts not just *Rahimi*'s admonitions that the challenged and historical regulations need not be identical, 602 U.S. at 698 (upholding outright dispossession based on tradition of surety measures), but also *Bruen*'s own insistence that States may require individuals to obtain permits *before* carrying and that such permits can be conditioned on background checks, 597 U.S. at 38 n.9. *Siegel* Plaintiffs respond that *Bruen* only sanctioned permitting laws allowing permit denials based on someone's "*conduct*," which they say implicates a distinct body of history. *Siegel*.Pet.11. But this response fails to distinguish this very reference requirement, which is merely an information-gathering tool to determine if that applicant "engaged in any acts or made any statements" showing that they pose a danger. N.J. Stat. Ann. §2C:58-4(b). And just like the historical regimes disarmed someone "if that particular individual" was dangerous, *Siegel*.Pet.9, New

Jersey's regime denies a permit based on information supplied by these references only when they identify threats this *particular applicant* might pose.

*Siegel* Plaintiffs' cursory argument that the surety laws and modern reference requirement are too distinct in rationale, except at some "high level of generality," *Siegel*.Pet.8, likewise fails. *Rahimi* already recognized that a "tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others," 602 U.S. at 700, and on that basis upheld a federal law disarming individuals subject to restraining orders to protect the broader public from any "threats of physical violence," *id.* at 698. The reference requirement shares the same purpose: it allows permitting officials to learn from the community whether the particular applicant's behavior suggests they pose a danger if armed, in order to protect the public from that danger. Nor does that overlap in purpose render the inquiry toothless. *Contra Siegel*.Pet.8. After all, the panel found the purpose behind surety laws and the modern insurance mandate (which sought to guarantee compensation for those who suffered injuries) too dis-analogous and invalidated the latter. *See* Op.73–75. But States may indeed act to protect residents from the threat of firearms violence posed by dangerous individuals, whether through the 18 U.S.C. §922(g)(8) prohibition upheld in *Rahimi*, or *ex ante* background-check regimes in *Bruen*, or the inclusion of references in the background-check process.

## II. EN BANC REVIEW IS UNWARRANTED AS TO THE SENSITIVE-PLACE DESIGNATIONS THAT THE PANEL UPHELD.

There is also no basis to rehear en banc the panel's decision upholding various of New Jersey's sensitive-places provisions. As above, some common ground exists: although the State may not prohibit carrying firearms in public, and may not limit public carry to those with a specialized need, *Bruen*, 597 U.S. at 71, the Supreme Court expressly held that States *can* prohibit carrying firearms in sensitive places, *id.* at 30. *Bruen* itself already offered some examples of historical sensitive places, emphasized that it had "no occasion to comprehensively define 'sensitive places' in th[at] case", and added that "courts can use analogies to … historical regulations of 'sensitive places'" to affirm the constitutionality of "modern regulations prohibiting the carry of firearms in new and analogous sensitive places." *Id.* at 30. The debate here thus turns entirely on whether the specific sensitive places New Jersey chose— most of which the panel upheld, some of which it did not—fit that tradition.

Once again, Plaintiffs cannot satisfy the traditional en banc criteria. Plaintiffs do not base their petitions on any split that requires en banc rehearing; rather, as the panel noted, its decision upholding most of the location-based restrictions is broadly consistent with other circuits' decisions. Op.8; *see also LaFave v. Cnty. of Fairfax*, 149 F.4th 476 (4th Cir. 2025); *Schoenthal v. Raoul*, 150 F.4th 889 (7th Cir. 2025); *Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024); *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024), *cert. denied* 145 S.Ct. 1900 (2025). But this Court has long expressed

"reluctan[ce] to contradict the unanimous position of other circuits" and has gone en banc to eliminate such splits, not create them. *Riccio v. Sentry Credit*, 954 F.3d 582, 591-92 (3d Cir. 2020) (en banc). If anything, the panel actually sided with the challengers on a key circuit conflict—invalidating a provision governing carrying on private property held open to the public without the owner's affirmative consent. *See*, *e.g.*, *Wolford v. Lopez*, __ S.Ct. ___, 2025 WL 2808808 (Oct. 3, 2025) (granting certiorari to resolve split on validity of such laws, but denying other question bearing on the methodology for assessing other sensitive-place measures).

Nor do "exceptional" consequences from the panel's decision require en banc review. FRAP 40(b)(2)(D). Plaintiffs primarily argue for exceptional importance by contending that the panel's decision renders them unable to carry firearms all across the State. *Siegel*.Pet.13–17; *Koons*.Pet.14-15. But this claim is incorrect, especially considering that the panel invalidated restrictions on carrying in private vehicles, *see* Op.129, and on private property open to the public absent the owner's express consent, *see* Op.88. Consistent with the panel's ruling, Plaintiffs remain free to carry at home, walking along the streets, driving in their cars, in most private businesses (unless the proprietor, of her own prerogative, affirmatively prohibits it), and any private home or private office that allows such carry. While Plaintiffs cannot carry firearms in a specific list of sensitive places—a comprehensive statute because New Jersey had not needed such a statute before *Bruen*, in contrast to other States that

have long had sensitive-place laws—this in no way amounts to a total prohibition on carrying firearms in public. And still more, proprietors of many such locations—like casinos, *see* NJ.Opening.Br.18 n.3—would prohibit firearms independently of state law. Plaintiffs therefore dramatically overstate the impacts that the upheld sensitive-place restrictions have on their ability to carry within New Jersey.

That leaves Plaintiffs' arguments that the panel's decision contravenes *Bruen*, *Lara*, and our historical tradition, but none of their claims holds water. With respect to *Bruen*, Plaintiffs' misunderstand that decision's sensitive-places discussion and New Jersey law alike. *Siegel*.Pet.13–15; *Koons*.Pet.6–7 (both discussing *Bruen*, 597 U.S. at 30–31). *Siegel* Plaintiffs contend that *Bruen* treated the only cognizable historical sensitive places as legislative assemblies, polling places, and courthouses, *see Siegel*.Pet.16, but *Bruen* explicitly cautioned against overreading its exemplars, noting that the Court had "no occasion to comprehensively define 'sensitive places' in th[at] case," and leaving such historical development to future cases, 597 U.S. at 30; *see also United States v. Harris*, 144 F.4th 154, 164 (3d Cir. 2025) (refusing to "defer to historical principles extracted from partial surveys of history relevant to other regulations"). And while *Bruen* certainly made clear that States could not just define their entire domain as sensitive, that is definitively not what New Jersey did— and certainly not what the panel did, given its place-by-place analysis, and in light of the provisions that the panel invalidated. *See supra* at 4–6.

Nor did the panel conflict with *Lara*'s instructions on which historical periods bear on this analysis. *Contra Koons*.Pet.12–14; *Siegel*.Pet.17. The panel "rel[ied] on 19th century history only where … such authorities … 'provide confirmation of [what Founding-era laws already] established.'" Op.26 n.7 (quoting *United States v. Quailes*, 126 F.4th 215, 222 (3d Cir. 2025)). This "is entirely consistent with *Lara*," Op.26 n.7, which acknowledged that Second Amendment principles can be distilled from "laws 'through the end of the 19th century,'" as long as they do not "*contradict* earlier evidence," *Lara*, 125 F.4th at 441 (emphasis added) (quoting *Bruen*, 597 U.S. at 35, 66). Although Plaintiffs claim that 19th century history here does "contradict" Founding-era evidence, they fail to offer Founding-era evidence that undermines the constitutionality of these later regulations. *Koons*.Pet.12–14. At most they cite a lack of certain regulations at the Founding, followed by a proliferation of such regulations once the societal problems they address became salient in the 19th Century. *Id.* But silence in one period is no conflict, and Plaintiffs make the very error Justice Barrett has warned against: "assum[ing] that founding-era legislatures maximally exercised their power to regulate," and that "21st-century regulations" must therefore precisely "follow late-18th-century policy choices," *Rahimi*, 602 U.S. at 739–40 (Barrett, J., concurring)—all contrary to the Supreme Court's insistence that the Constitution does not demand "a law trapped in amber," *id.* at 691. Because here, Founding and 19th century evidence does not conflict, *Lara* permits consideration of both.

That leaves Plaintiffs' claims that the panel got the historical analysis wrong, but even were merits disputes enough, the panel's thorough analysis warrants no further review. *Koons* Plaintiffs, for their part, seek rehearing for the en banc court to announce a radical rule: that arms may be banned only in those places where the government provides comprehensive, TSA-style security. *Koons*.Pet.10–12. At the panel stage, they even characterized this type of comprehensive security as providing "metal detectors and armed guards at every point of entry." Dkt. 103 at 36. Neither *Siegel* Plaintiffs nor Judge Porter's dissent endorses this ahistorical proposition, and *Koons* Plaintiffs do not identify any court that has done so. Nor is that surprising, as it would fail to justify modern bans in myriad schools and polling places—locations *Bruen* already recognized as sensitive. 597 U.S. at 30; *see also Schoenthal*, 150 F.4th at 909. And there is no evidence that such security was provided in the places where all agree firearms were once barred, given the "lax and irregular security practices" at legislative assemblies and courthouses "in our nation's past." *Id.* at 909–10. There is no need for en banc review to adopt an unprecedented, ahistorical line.

But without such a bright line, en banc review is especially unwarranted to re-analyze the panel's assessment of 12 specific sensitive-place restrictions based on a voluminous historical record that took a 131-page opinion to evaluate. *See Mitts*, 626 F.3d at 370 (Sutton, J., concurring) (noting "inefficien[cy]" of considering such cases as a 14-judge court, and the concerns with "vacating a panel opinion that is the

product of a substantial expenditure of time and effort by three judges"). Here, the panel expended considerable effort hewing faithfully to the instructions in *Bruen* and *Rahimi*, meticulously scrutinizing a voluminous historical record, distilling from that record the "principles that underpin our regulatory tradition," and "consider[ing] whether [each] challenged regulation is consistent" with those principles. *Rahimi*, 602 U.S. at 692 (citing *Bruen*, 597 U.S. at 26–31). Plaintiffs complain that the *results* of the panel's analysis are self-evidently flawed, but that mistakes their own policy preferences for the painstaking historical review that undergirded the panel's results, *Siegel*.Pet.13–15; *Koons*.Pet.7, and yet again mischaracterizes the panel's decision as effectively banning carry in New Jersey, *see supra* at 12–13. And *Siegel* Plaintiffs' criticism of the panel's "flexible" approach for the places that lacked clear Founding-era counterparts, *Siegel*.Pet.16, ignores that the panel followed *Bruen*'s instruction to employ "nuance[]" when analyzing such regulations, 597 U.S. at 27, and *Rahimi*'s warning not to create "a law trapped in amber," 602 U.S. at 691. Plaintiffs may well disagree with the specific results the panel reached on specific places and bodies of history, but such complaints supply no basis for en banc review.

## CONCLUSION

This Court should deny the petitions for rehearing en banc.

Respectfully Submitted,

MATTHEW J. PLATKIN
Attorney General of New Jersey

By:   /s/ *Angela Cai*
        Angela Cai
        Executive Assistant Attorney General

Dated: November 14, 2025

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am an attorney in good standing of the bar of the Third Circuit.

/s/ *Angela Cai*

Angela Cai
Executive Assistant Attorney General
Office of the New Jersey Attorney General
NJ Bar #121692014

Dated: November 14, 2025

## CERTIFICATION OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using Microsoft Word 2016, in Times New Roman, 14-point, type style. I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because this brief contains 3,890 words, excluding portions exempted by Fed. R. App. P. 32(f).

I certify that this petition complies with L.A.R. 31.1(c) because the text of the electronic brief will be identical to the text of any hard-copy briefs the Court may request. Pursuant to L.A.R. 35.2(a), no paper copies of this brief will be provided unless directed by the Court.

I further certify that prior to electronically filing this brief with the Court today it was scanned by Crowdstrike Falcon Sensor version 7.27.19907.0, a virus detection software, and found to be free from computer viruses.

/s/ *Angela Cai*

Angela Cai
Executive Assistant Attorney General
Office of the New Jersey Attorney General

Dated: November 14, 2025

**CERTIFICATION OF SERVICE**

On November 14, 2025, the undersigned caused this brief to be filed with the

Clerk of the United States Court of Appeals for the Third Circuit via electronic filing.

I further certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the CM/ECF system with hardcopies to be sent via

overnight mail when directed by the Court.

/s/ *Angela Cai*

Angela Cai
Executive Assistant Attorney General
Office of the New Jersey Attorney General

Dated: November 14, 2025