No. 23-1900

# In The United States Court of Appeals
# For the Third Circuit

RONALD KOONS, ET AL.,

*Plaintiffs-Appellees*,

v.

ATTORNEY GENERAL NEW JERSEY, ET AL.,

*Defendants-Appellants*.

AARON SIEGEL, ET AL.,

*Plaintiffs-Appellees*,

v.

ATTORNEY GENERAL NEW JERSEY, ET AL.,

*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Nos. 22-cv-07464 & 22-cv-07463 (RMB))

## SUPPLEMENTAL BRIEF FOR *KOONS* PLAINTIFFS-APPELLEES

David D. Jensen
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York 12508
(212) 380-6615
david@djensenpllc.com

David H. Thompson
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellees Ronald Koons, Nicholas Gaudio, Jeffrey M. Muller, Gil Tal, Second Amendment Foundation, Firearms Policy Coalition, Inc., Coalition of New Jersey Firearm Owners, and New Jersey Second Amendment Society*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ...........................................................................................1

ARGUMENT ................................................................................................3

    I.     The Supreme Court Struck Down as Unconstitutional New Jersey's Presumptive Carry Ban on Private Property Open to the Public. ..............3

    II.    The Supreme Court Made Clear that a State May Not Nullify the Second Amendment by Banning Firearms in Public Places that "People Routinely Visit." ...............................................................................4

    III.   Supreme Court Precedent Establishes that New Jersey Cannot Historically Justify Its Remaining Regulations Under *Bruen*....................7

CONCLUSION .............................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Wolford v. Lopez,*
No. 24-1046, 2026 WL 1825723
(U.S. June 25, 2026) .......................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11

*United States v. Hemani,*
No. 24-1234, 2026 WL 1751710 (U.S. June 18, 2026) ......................1, 7, 8, 9

*Koons v. Att'y Gen. N.J.,*
156 F.4th 210 (3d Cir. 2025) ...............................................................8, 9, 10

**Statutes**

N.J.S.A.
§ 2C:43-6(a)(3) ....................................................................................5
§ 2C:43-6(a)(4) ....................................................................................6
§ 2C:44-1(f)(1)(d) ................................................................................5
§ 2C:44-1(f)(1)(e) ................................................................................6
§ 2C:58-4.6(a) .....................................................................................6
§ 2C:58-4.6(b)(1) .................................................................................6

## INTRODUCTION

The Supreme Court's decisions in *Wolford v. Lopez,* No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026), and *United States v. Hemani*, No. 24-1234, 2026 WL 1751710 (U.S. June 18, 2026), confirm that this Court must reject New Jersey's effort to legislate around the Second Amendment.

*First*, *Wolford* requires this Court to affirm the district court's decision holding unconstitutional New Jersey's law presumptively banning the carry of firearms on private property held open to the public. *Wolford* invalidated Hawaii's materially identical law and held that laws "prohibiting firearms on private property without the express and affirmative consent of the property owner" violate the Second Amendment. 2026 WL 1825723, at *3. Indeed, the Court specifically cited New Jersey's ban as one such law. *See id.* at *7 (citing N.J. STAT. ANN. § 2C:58–4.6(a)(24)). *Wolford* directly invalidates that restriction as contrary to the Second Amendment.

*Second*, *Wolford* confirms that the presumptive carry ban is one part of a broader post-*Bruen* effort by states such as Hawaii and New Jersey to "hobble[ ] what the Second Amendment protects: the right of Americans to carry arms for self-defense as they go about their daily lives." *Id.* at *4.

The Court's description of Hawaii's efforts applies equally to New Jersey's. "For years, the State of Hawaii," like the State of New Jersey, "made it almost

impossible to obtain a license to carry a firearm. Four years ago, however, [the Supreme] Court held in *New York State Rifle & Pistol Assn., Inc. v. Bruen* … that the Second and Fourteenth Amendments protect the right to carry handguns outside the home for self-defense." *Id*. at *3. "Hawaii," again like New Jersey, "responded by replacing its old law on carry permits with new laws that achieved a similar result." *Id.* Those new laws included the law before the Court in *Wolford* "prohibiting firearms on private property without the express and affirmative consent of the property owner." *Id*. But they also included laws like the rest of those before this Court. Hawaii, once again like New Jersey, had made it so that "[o]n a large portion of the land within the State's boundaries, possession of a firearm is now flatly prohibited." *Id*. "Some of these places are owned by the State, but many categories include privately owned property. So even if the owner of such a place wanted to admit individuals who are carrying a gun for self-defense, the owner could not do so." *Id.* at *8. While *Wolford* did not directly address the constitutionality of these absolute locational restrictions (given they were not before the Court), the Court's framing makes clear that they should be treated with extreme skepticism. After all, even if most New Jerseyans, like "most Hawaiians might prefer that no one carry firearms in public places, a majority's opposition to a constitutional right is not a permissible basis for restricting it." *Id*. at *20 (Barrett, J., concurring).

2

*Third*, both *Wolford* and *Hemani* further clarified the inquiry at the historical phase of the *Bruen* framework to determine whether a state restriction complies with the Second Amendment. Historical analogues must be "widespread, well-known, and widely accepted." *Id.* at \*14. Generic or overbroad examples such as the ones New Jersey mustered are not sufficient. *Id.* at \*12 (rejecting alleged historical analogues as "vastly different" because "[t]hey consist almost entirely of laws that prohibited unauthorized hunting of deer or small game on someone else's private property"). Nor is reliance on racist "Black Codes," which New Jersey invoked in this case, any basis on which to continue to restrict constitutional rights. *Id.* at \*14. Applying the proper test, the State cannot meet its burden to present adequate historical analogues justifying its extensive restrictions on the carrying of protected Arms in places "people routinely visit in the course of their daily routines." *Id.* at \*3.

## ARGUMENT

### I. The Supreme Court Struck Down as Unconstitutional New Jersey's Presumptive Carry Ban on Private Property Open to the Public.

In *Wolford*, the Supreme Court held unconstitutional state laws "prohibiting firearms on private property without the express and affirmative consent of the property owner." *Id.* at \*3. And the Court explicitly cited New Jersey's Anti-Carry Default Rule at issue here. *See id.* at \*7 (citing N.J. STAT. ANN. § 2C:58–4.6(a)(24)). Accordingly, the State's Anti-Carry Default Rule has been struck down as inconsistent with the Second Amendment and can no longer stand under *Wolford*.

3

**II. The Supreme Court Made Clear that a State May Not Nullify the Second Amendment by Banning Firearms in Public Places that "People Routinely Visit."**

As to New Jersey's restrictions on carrying firearms in specific public places, the Court emphasized that states may not seek to weaken the Second Amendment's force by making it difficult for peaceable individuals to carry a firearm in the spaces of daily life. After all, "the Second Amendment protects[] the right of Americans to carry arms for self-defense as they go about their daily lives." *Id.* at *4.

In *Wolford*, the Court discussed Hawaii's bans on the carrying of a firearm in various public and private places. The Court explained:

> Hawaii imposes two additional restrictions on carrying firearms. The first bans the possession of a firearm in significant categories of places: . . . [including] any "stadium, movie theater, or concert hall"; any "public library property"; . . . any "beach, playground," or park; "any bank or financial institution"; any "amusement park, aquarium, carnival, circus, fair, museum, water park, or zoo"; and any "public gathering, public assembly, or special event conducted on property open to the public." [HAW. REV. STAT.] § 134–9.1(a). Some of these places are owned by the State, but many of the categories include privately owned property.

*Id.* at *8.

Although the Court did not address the constitutionality of these place-based bans directly, the Court described the "ban" on "the possession of a firearm in significant categories of places"—including "privately owned property"—with skepticism. *Id*. And the Court declared more broadly that "Hawaii's prohibitions on

4

public carry represent a distinct outlier" in the historical tradition of permitting public carry. *Id.* at *11.

Further, the Court's reasoning demonstrates why New Jersey's locational restrictions are not consistent with the Second Amendment's constitutional guarantee. To demonstrate the impediments to armed self-defense posed by the presumptive carry ban, the Court used an example: "[a] hypothetical young woman, [who] after clearing all the hurdles needed to get a [] carry permit, leaves her home on a weekday morning and carries a handgun on her person or in a purse." *Id.* at *9. The Court catalogued typical stops at various places that an ordinary person might visit throughout the day. *Id.* at *9–10. "[B]y the end of an ordinary day," the Court concluded, "our hypothetical young woman could be a criminal at least six times over." *Id.* at *10. For this reason, the Court held, the challenged restriction "severely hampers the ability of a law-abiding citizen to exercise the right *Bruen* recognized." *Id.*

The very same can be said of New Jersey's restrictions at issue here. Chapter 131 makes it a crime of the third degree, with a presumptive sentence of four years' and a maximum of five years' imprisonment, *see* N.J.S.A. §§ 2C:43-6(a)(3), 2C:44-1(f)(1)(d), "to knowingly carry a firearm" in 25 different categories of publicly and privately owned places. Much like Hawaii's law, these restrictions cover ordinary places that an average citizen might visit in a typical day. Places such as public

libraries, museums, places where alcohol is sold for on-site consumption, and public or private entertainment facilities. *Id.* §§ 2C:58-4.6(a)(12), (15), (17). The State also forbids permit holders from carrying functional handguns in *any vehicle*, making it a crime of the fourth degree, *see id.* §§ 2C:43-6(a)(4), 2C:44-1(f)(1)(e) (emphasis added), "to carry or transport a firearm . . . while in a vehicle in New Jersey unless the handgun is unloaded and contained in a closed and securely fastened case, gunbox, or locked unloaded in the trunk of the vehicle." *Id*. § 2C:58-4.6(b)(1).

Just like the Hawaii example the Supreme Court outlined, a peaceable New Jerseyan seeking to exercise her Second Amendment protected right to self-defense could find herself "a criminal at least six times over . . . [b]y the end of an ordinary day." *Wolford*, 2026 WL 1825723, at \*10. Carrying a firearm for a morning visit to the local library, an afternoon pit stop at a local restaurant that happens to serve alcohol, and keeping it available during the drive in between these places and home would alone risk a significant criminal rap sheet and years of imprisonment. Like Hawaii's now-unconstitutional restrictions on the everyday exercise of the Second Amendment protected right, the State's restrictions on specific locations here "severely hamper[] the ability of a law-abiding citizen to exercise the right *Bruen* recognized." *Id*.

### III. Supreme Court Precedent Establishes that New Jersey Cannot Historically Justify Its Remaining Regulations Under *Bruen*.

Finally, the Court reiterated and clarified the analogical burden the State must satisfy under *Bruen*'s historical inquiry. "An outlier legal rule adopted in a few locales is not enough." *Id.* at *11. Rather, a successful historical analogue will be "widespread, well-known, and widely accepted." *Id.* at *14. And of course, as Plaintiffs have consistently argued in this case, it is inappropriate to rely on the "Black Codes" passed by former Confederate states before they were readmitted to the Union for its historical analogies. *See Koons* Pls.' Resp. Br., Doc. 103 at 12, 46–47 (Aug. 21, 2023) ("Resp. Br.") ((discussing State's reliance on Louisiana and Texas "Black Codes" and arguing they should be treated as, "if anything, *anti-analogues*"). As the Supreme Court explained in *Wolford*, "[u]nless we put history entirely out of our minds," the argument that these "tainted artifact[s] illuminate[] the original understanding of the right to keep and bear arms cannot be taken seriously." 2026 WL 1825723, at *14. And a historical analogue must also be sufficiently tailored to the modern conduct the State seeks to regulate. *Hemani* provides a case in point on the requirement of specificity. There, the Court found that "the government's analogy fails" because "the historical laws on which it relies targeted different kinds of people, did so for different reasons, and operated in different ways." *Hemani*, 2026 WL 1751710, at *12. "And faced with all these

7

shortcomings," the government had not "carried its conceded burden" under *Bruen*. *Id.*

The same is true here. As the *Koons* Plaintiffs have explained, "New Jersey cites no regulation from the relevant era, or any era, that is similar to any challenged provision in 'how and why' it restricted the right to bear arms." Resp. Br. at 12 (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 29 (2022)). Rather, most of the State's alleged analogues "were enacted long after the Founding era, which *Bruen* reaffirmed as the relevant time period for this analysis; or were clear outliers covering only small or sparsely populated jurisdictions." *Id.* And the Supreme Court has now left no doubt that "[a]n outlier legal rule adopted in a few locales is not enough." *Wolford*, 2026 WL 1825723, at *11.

As a prime example of how ruinous applying these precedents is for the State's case, consider the restrictions on locations that sell alcohol for on-site consumption. The panel concluded that this limitation was historically justified by pointing to laws from the Colonial and Founding eras that barred firing guns in taverns, confined drunks while they were under the influence, or required sureties of them to ensure good behavior. *Koons v. Att'y Gen. N.J.*, 156 F.4th 210, 261 (3d Cir. 2025), *reh'g granted*. Those laws, the panel concluded, showed a Founding-era "recognition of the dangerous combination that firearms and alcohol present" that supported the ban. *Id. Hemani* rejects that type of reasoning. First, it stressed that there was a "culture

of copious drinking in early America" that nevertheless respected the right of ordinary Americans to generally bear arms. *Hemani*, 2026 WL 1751710, at *7 (internal quotation marks omitted). Second, it looked at many of the same restrictions that the panel relied on and rejected the notion that they stood for anything more than the proposition that those whose "drinking rendered them practically incapacitated and incapable of managing their affairs" could, in some ways, have their rights restricted. *Id*. But that cannot justify a law that "sweeps in large numbers of people without regard to whether their substance use has the kind of incapacitating effect on them that historical habitual drunkard laws normally required," *id.*, like this one, which disarms anyone who visits an Olive Garden.

Turning to later history, the panel chiefly relied upon New Mexico, Arizona, Oklahoma, and New Orleans laws barring firearms in places serving alcohol. *Koons*, 156 F.4th at 262. But as Plaintiffs explained in their brief, these laws were late-in-time, territorial and municipal restrictions that were irrelevant to the vast majority of the country. Resp. Br. at 34–35; *see also Koons*, 156 F.4th at 310 (Porter, J., concurring in part and dissenting in part) ("[H]ardly a representative sample of the American public."). In other words, they were exactly the sort of outliers that *Wolford* said are not informative about the scope of the right or our country's regulatory traditions, especially when compared with the "overwhelming weight" of historical evidence supporting the "right of the public to peaceably carry handguns

for self-defense" and "show[ing] an enduring American tradition permitting public carry." 2026 WL 1825723, at *7, *11 (internal quotation marks omitted).

The same is true of New Jersey's case more broadly. In addition to isolated local or territorial laws, the panel decision (following the State) relied heavily on a handful of post-Fourteenth Amendment laws in states such as Tennessee, Georgia, Texas, and Missouri to support its sweeping carry restrictions. *See, e.g.*, *Koons*, 156 F.4th at 238, 253, 263; Defs.-Appellants Resp. Br., Doc. 108 at 14, 16–17, 19 (Sep. 4, 2023). These few, regionally concentrated, late-breaking laws cannot justify restricting the right to carry to "wastelands" "where people don't care about assembling with others, eating and drinking, commerce, divisive opinions, amusement, recreation, education, worship, public travel, leisure, community, and where children or vulnerable people are not normally present." *Koons*, 156 F.4th at 276 (Porter, J., concurring in part and dissenting in part).

\*\*\*

*Wolford* flatly rejected creative efforts to legislate around the requirements of *Bruen*. The Court recognized that "[a]fter *Bruen*, Hawaii and four other States"— one of which was New Jersey—"singled out in th[e *Bruen*] decision flipped" the default rule making "private property open to the public unless specifically prohibited." *Wolford*, 2026 WL 1825723, at *7 (citing N. J. STAT. ANN. § 2C:58–4.6(a)(24)). In rejecting that gambit, the Court has now made clear that a State cannot

circumvent the Second Amendment's protection of the right to public carry through novel locational restrictions any more than it could through restricting carry licenses.

## <u>CONCLUSION</u>

The District Court's preliminary injunction of the Chapter 131 provisions challenged by the *Koons* Plaintiffs should be affirmed.

Dated: July 8, 2026

David D. Jensen
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York 12508
(212) 380-6615
david@djensenpllc.com

Respectfully submitted,

*/s/David H. Thompson*
David H. Thompson
Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Ave. NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellees Ronald Koons, Nicholas Gaudio, Jeffrey M. Muller, Gil Tal, Second Amendment Foundation, Firearms Policy Coalition, Inc., Coalition of New Jersey Firearm Owners, and New Jersey Second Amendment Society*

**CERTIFICATE OF BAR MEMBERSHIP**

I hereby certify that I am a member of the Bar of this Court.

Dated: July 8, 2026
/s/David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellees Ronald Koons, Nicholas Gaudio, Jeffrey M. Muller, Gil Tal, Second Amendment Foundation, Firearms Policy Coalition, Inc., Coalition of New Jersey Firearm Owners, and New Jersey Second Amendment Society*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of this Court's Order because this brief contains 2,496 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Times New Roman font.

As required by L.A.R. 31.1(c), the text of the electronic brief is identical to the text in the paper copies.

The Portable Document Format version of the attached document has been scanned for viruses using VirusTotal Antivirus Software, and according to that program, the document is free of viruses.

Dated: July 8, 2026                /s/David H. Thompson
                                      David H. Thompson

*Counsel for Plaintiffs-Appellees Ronald Koons, Nicholas Gaudio, Jeffrey M. Muller, Gil Tal, Second Amendment Foundation, Firearms Policy Coalition, Inc., Coalition of New Jersey Firearm Owners, and New Jersey Second Amendment Society*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on July 8, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 8, 2026

/s/David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellees
Ronald Koons, Nicholas Gaudio,
Jeffrey M. Muller, Gil Tal, Second
Amendment Foundation, Firearms
Policy Coalition, Inc., Coalition of
New Jersey Firearm Owners, and
New Jersey Second Amendment
Society*