

Cullen and Dykman LLP
Continental Plaza
433 Hackensack Avenue
Hackensack, NJ 07601
T: 201.488.1300
F: 201.488.6541

LEON J. SOKOL
PARTNER
lsokol@cullenllp.com

July 8, 2026

**Via ECF**

Patricia S. Dodszuweit, Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

> **Re:  Letter-brief submitted pursuant to this Court's Order dated June 26, 2026 in 23-1900, *Siegel v. Attorney General of New Jersey* and No. 23-2043, *Koons v. Attorney General of New Jersey***

Dear Ms. Dodszuweit:

This office (together with the firm of Kologi Simitz) represent Defendants-Intervenors-Appellees Senate President Nicholas P. Scutari and New Jersey General Assembly Speaker Craig J. Coughlin ("the Presiding Officers").  Pursuant to this Court's Order dated June 26, 2026, we submit this letter-brief addressing the Supreme Court's recent decisions in *Wolford v. Lopez,* __ U.S.__, 2026 WL 1825723 (June 25, 2026), and *United States v. Hemani,* __ U.S. __, 2026 WL 1751710 (June 18, 2026).

We are aware that the Appellants will be filing their own brief in response to this Court's June 26 Order.  We join Appellants in their analysis of the applicability of *Wolford* and *Hemani*.  To the Appellants' arguments, we add only the following.  Our briefing is limited to the Court's decision in *Hemani*.

\*\*\*

The facts and procedural history of *Hemani* may be briefly stated. The government prosecuted the defendant under 18 U.S.C. § 922(g)(3) for knowingly possessing a gun in his home while being an unlawful user of a controlled substance.  The defendant sought

dismissal of the indictment, arguing that the government's effort to enforce § 922(g)(3) against him violated the Second Amendment. The district court granted the motion. The Fifth Circuit affirmed the dismissal. The Supreme Court granted certiorari and affirmed.

Before the Supreme Court, the government analogized its construction of § 922(g)(3) to "habitual drunkard" laws, which were widely adopted by the States in the Founding Era These habitual drunkard laws fall into three general categories: (1) vagrancy laws that allowed habitual drunkards to be confined in workhouses or jailed; (2) civil-commitment statutes that allowed courts to appoint guardians for habitual drunkards or authorized their commitment to asylums; and (3) surety laws under which judicial officers could compel habitual drunkards to post surety bonds to ensure their good behavior. Op. 6. The Government argued that these three types of laws are "relevantly similar" to § 922(g)(3) – and thereby sustainable under the test propounded by the Court in *Bruen* and *Rahimi*. Op. 6.

The Court rejected the Government's proffered historical analogue between the regulation of the gun rights of "habitual drunkards" in the Founding Era and § 922(g)(3)'s sweeping curtailment of gun rights to marijuana users who merely admitted to casual use of marijuana. Applying *Bruen* and *Rahimi*, the Court found that the three types of "habitual drunkard" laws were not "relevantly similar" to § 922(g)(3). Indeed, the Court determined that the "habitual drunkard" laws were not similar in any way whatsoever to § 922(g)(3). Op. 7.

The Court explained that "the habitual drunkard laws on which the government relies … differ dramatically from § 922(g)(3)'s unlawful user provision on every single metric the government invites us to consider: They targeted different kinds of people, did so for different purposes, and operated in different ways." Op. 7. The Court concluded:" Whether any one of these problems taken in isolation would prove fatal to the government's cause, we need not decide. Taken cumulatively, we hold, they certainly do." *Ibid*.

In contrast to the strained and attenuated "historical analogue" inquiry in *Hemani*, the inquiry into the sensitive-place designations in this case is simple and straightforward. For example, Plaintiffs here challenge the sensitive-place designation for permitted public gatherings, demonstrations and events. In upholding these designations, the panel below relied on six state statutes prohibiting firearms at certain social events. *See* JA 1249–51, 1513–14 (1870 and 1871Texas laws); JA 1510–12 (1869 Tennessee law); JA 1370 (1870 Georgia law); JA 1515–16, 1712–14 (1874 and 1879 Missouri laws); JA 2093–95 (1889

Arizona law); JA 2096–98 (1890 Oklahoma law).  *See* Panel Op., at 88-89.  With regard to these historical analogues, the panel below noted that the referenced "statutes represent a more recent application of the centuries-old practice of proscribing weapons at discrete locations -- from courts to legislative bodies to polling places -- set aside for the purposes of governmental services and peaceful assembly."  Op., at 89-90.  The panel concluded: "The permitted public gatherings, demonstrations, and events that § 2C:58-4.6(a)(6) protects fit comfortably within these historically designated locations."  Panel Op., at 90.

The point is this: Unlike in *Hemani*, the historical analogues here at issue – far from "target[ing] different kinds of people… for different purposes… and operat[ing] in different ways," Op. 7 – relied on statutes that affected precisely the same people (*i.e.*, persons engaging in public gatherings) for the same purpose (*i.e.*, public safety in critically important places of places accommodation) and operated in the same way (*i.e.*, restrictions on gun carry).  Nothing in *Hemani* calls into question the decision of the panel below with respect to these sensitive-place designations.

Similarly, Plaintiffs here challenge the decision of the panel below upholding a sensitive place designation for parks and beaches. The panel below determined that the challenged regulations "seek to maintain peace and curb disturbances posed by firearms at New Jersey's public parks, beaches, zoos, and recreation facilities, with an additional, more specific goal of protecting the children who frequent these locations." Panel Op., at 98.  More particularly, the panel found that "[t]hese legislative goals find support in the historic principle, established through several analogous historical laws, which forbade guns from centers of community life, such as fairs and markets, to ensure visitors could participate without the risks and anxieties associated with deadly weapons."  Panel Op., at 98-99 (citing examples).

Here again – and unlike in *Hemani* -- the historical analogues here at issue relied on statutes that affected precisely the same people (*i.e.*, persons using parks and beaches) for the same purpose (*i.e.*, public safety in specific areas of public accommodation) and operated in the same way (*i.e.*, restrictions on gun carry).

Likewise, Plaintiffs challenge the decision of the panel below upholding a sensitive place designation that applies to bars and other locations that serve alcohol.  In support of its determination, the panel below relied on historical laws from Texas, Georgia, Missouri, Arizona, Louisiana, New Mexico Oklahoma, Rhode Island and Delaware. Panel Op., at 108-113.  After carefully cataloging and analyzing these many history analogues, the panel

concluded that these regulations, "[t]aken together … support the common-sense notion that intoxicated people "cannot necessarily be trusted with firearms" and may "be unable to defend themselves effectively."  Op., at 112 (quoting Antonyuk v. James, 120 F.4th 941, 1031 (2d Cir. 2024))

Once again, these historical analogues here at issue relied on statutes that affected precisely the same people (*i.e.*, persons patronizing establishments that serve liquor) for the same purpose (*i.e.*, public safety in specific areas of public accommodation where alcohol is served) and operated in the same way (*i.e.*, restrictions on gun carry).

Moreover, it bears repeating that the Court in *Hemani* held that "the habitual drunkard laws on which the government relies here differ dramatically from § 922(g)(3)'s unlawful user provision on every single metric the government invites us to consider: They targeted different kinds of people, did so for different purposes, and operated in different ways." Op. 7. The Court concluded: "Whether any one of these problems taken in isolation would prove fatal to the government's cause, we need not decide. **Taken cumulatively, we hold, they certainly do.**" *Ibid (*emphasis added).  Here, by contrast, the sensitive-place designations at issue do not fail to satisfy any one of the three "metrics" that are identified in *Hemani*—let alone fail to satisfy all three metrics that the *Hemani* court identified as "cumulatively … fatal" to the application of an historical analogue.  Therefore, *Hemani* does not call into question the decision of the panel below.

Finally, we note that the *Hemani* Court expressly reaffirmed the essential elements of the "historical analogue" inquiry that the Court had carefully laid down in *Bruen* and *Rahimi*:

> Our cases demand this attention to history, we have said, because the Second Amendment was designed to codify a "pre-existing" individual right and guard against its later erosion by majoritarian legislation or judicial fiat. Id., at 25, 142 S.Ct. 2111 (emphasis deleted). At the same time, we have recognized that "[t]he regulatory challenges posed by firearms today are not always the same" as those earlier generations faced. Id., at 27, 142 S.Ct. 2111. Accordingly, to show that a contemporary regulation is consistent with this Nation's historical tradition of firearm regulation, **we do not require the government to point to a "historical twin" or "precis[e] ... historical precursors**." United States v. Rahimi, 602 U.S. 680, 692, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024) (internal quotation marks omitted). Instead, we have said, "the appropriate analysis involves considering whether the challenged regulation **is consistent**

> **with the principles that underpin our regulatory tradition**." Ibid. And, to that end, the government may "reaso[n] by analogy," showing that its contemporary regulation is "relevantly similar" to ones "well-established" in the Nation's history. Bruen, 597 U.S. at 28–30, 142 S.Ct. 2111.
>
> [Op. 4 (emphasis added)]

Thus, *Hemani* reaffirmed the holding in *Rahimi* that a regulation must be "consistent with the **principles** that underpin our regulatory tradition," *Rahimi*, 602 U.S. at 692 (emphasis added).   Thus, to be constitutional under *Hemani* and *Rahimi*, a modern regulation only needs to be consistent with the principles of our tradition, not identical to older regulations. *Ibid*.

Then too, it should not be forgotten that *Rahimi* upheld a domestic violence restraining order that included a suspension of the defendant's gun rights. In that case the government did not offer any historical analogues that allowed for the abridgement of the gun rights of a defendant who committed an act of domestic violence – notwithstanding that this would be the most specific historical analogue to justify the defendant's loss of his Second Amendment rights. Instead, the Court in *Rahimi* found a more general justification: "to mitigate demonstrated threats of physical violence." *Rahimi*, 602 U.S. at 698.   This is an application of the principles-based approach – as recognized in *Rahimi* and as reaffirmed in *Hemani*.   As applied to this case, the principles-based approach fully supports the decision of the panel below.

## <u>CONCLUSION</u>

For the reasons set forth above, nothing in *Hemani* calls into question the decision of the panel below.  On the contrary: the Court's decision fully supports the decision of the panel below.

Respectfully submitted,

Cullen and Dykman LLP

By:*/s/ Leon J. Sokol*
    Leon J. Sokol

Patricia S. Dodszuweit, Clerk of Court.
July 8, 2026
 Page 6

Kologi ◆ Simitz,
Counsellors at Law

By:*/s/ Edward J. Kologi*
     Edward J. Kologi

Attorneys for Intervenors-Defendants-Appellees Senate President Nicholas P. Scutari and Assembly Speaker Craig J. Coughlin


cc: All counsel via ECF